LAW OFFICES OF KYLE KUBISCH
Kyle Kubisch (State Bar No. 203981)
2600 Michelson Drive, Suite 1700
Irvine, CA  92612
Telephone:  949-225-4475
Facsimile:  949-225-4476
kkubisch@kubischlaw.com

Attorneys for Plaintiff
SHUTAO LIN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHUTAO LIN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THE GABONESE REPUBLIC,<br><br>　　　　Defendant. | Case No.  8:19-cv-01677-JVS-KES<br><br>**PLAINTIFF SHUTAO LIN'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT THE GABONESE REPUBLIC; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Filed Concurrently with Declaration of Shutao Lin]**<br><br>**Date:   March 23, 2020**<br>**Time:  1:30 p.m.**<br>**Dept:  10C** |

Please take notice that on **March 23, 2020** at **1:30 p.m.**, or as soon thereafter as the parties may be heard in Department 10C of the above-entitled Court located at 411 West Fourth Street, Santa Ana, California, Plaintiff Shutao Lin ("Plaintiff") will move for default judgment against defendant The Gabonese Republic ("Defendant"). Default judgment is appropriate pursuant to Federal Rule of Civil Procedure 55(b) and Local Rule 55-1 because the Defendant has failed to defend itself in this action the court has already entered default against Defendant.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Shutao

1  Lin and exhibits attached thereto, and the pleadings and papers on file in this action.

2  Date:  February 24, 2020          LAW OFFICES OF KYLE KUBISCH

3                                    By: _____/s/ Kyle Kubisch_____

4                                         KYLE KUBISCH
                                           Attorney for Plaintiff
5                                          SHUTAO LIN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF SHUTAO LIN'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST
DEFENDANT THE GABONESE REPUBLIC

# **TABLE OF CONTENTS**

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     FACTUAL SUMMARY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
        A.    Underlying facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
        B.    Procedural history . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.    DEFENDANT WAS SERVED AND FAILED TO APPEAR . . . . . 4
        A.    The Court has jurisdiction over Defendant . . . . . . . . . . . . . . 5
        B.    Defendant was properly served . . . . . . . . . . . . . . . . . . . . . . 5
        C.    Defendant failed to appear and has defaulted . . . . . . . . . . . . 6
        D.    Plaintiff has complied with Local Rule 55 . . . . . . . . . . . . . . 6

IV.     JUDGMENT SHOULD BE ENTERED AGAINST
        DEFENDANT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        A.    Plaintiff will be prejudiced absent entry of
              default judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        B.    Plaintiff has alleged meritorious claims. . . . . . . . . . . . . . . . 7
        C.    Eitel factors four through seven also weigh in favor
              of judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
              1.    Amount at stake . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
              2.    Possibility of dispute . . . . . . . . . . . . . . . . . . . . . . . 10
              3.    Possibility of excusable neglect . . . . . . . . . . . . . . . . 11
              4.    Policy for deciding cases on the merits . . . . . . . . . . . 11
        D.    The monetary relief plaintiff seeks is fair and reasonable . . . 11
              1.    Plaintiff has established damages . . . . . . . . . . . . . . . . 11
              2.    Plaintiff is entitled to pre-judgment interest . . . . . . . . 12
              3.    The court should adopt a seven percent per annum
                    interest rate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

V.      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

## Cases

### Federal

*Au Bon Pain Corp. v. Artect, Inc*., 653 F.2d 61 (2d Cir. 1985) . . . . . . . . . . 7

*Barnard v. Theobald*, 721 F.3d 1069 (9th Cir. 2013) . . . . . . . . . . . . . . . . 13

*Danning v. Lavine*, 572 F.2d 1386 (9th Cir.1978) . . . . . . . . . . . . . . . . . . . 8

*Eitel v. McCool*, 782 F .2d 1470 (9th Cir. 1986) . . . . . . . . . . . . . . . . <u>passim</u>

*Elektra Entertainment Group Inc. v. Crawford*,
    226 F.R.D. 388 (C.D.Cal.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Fed. Trade Comm. v. 1263523 Ontario Inc.*,
    205 F. Supp. 2d 205 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . 7, 11

*FTC v. Good Ebusiness, LLC*, 2016 WL 3704489
    (C.D. Cal. July 12, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

*FTC v. Hope for Car Owners, LLC*,  No. 2:12-cv-778,
    2013 WL 322895, at *5-7 (E.D. Cal. Jan. 24, 2013) . . . . . . . . . . . 12

*Geddes v. United Fin. Grp*, 559 F.2d 557 (9th Cir. 1977) . . . . . . . . . . . . . 7

*Great American Insurance Co. v. MIVCO Packing Co*.,
    LLC, No. 08-05454, 2009 WL 942390  (N.D.Cal. April 6, 2009) . . . 8

*Landstar Ranger, Inc. v. Parth Enters., Inc*.,
    725 F. Supp. 2d 916 (C.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . 10

*PepsiCo, Inc. v. Cal. Sec. Cans*,
    238 F. Supp. 2d 1172 (C.D. Cal. 2002) . . . . . . . . . . . . . . . . . . <u>passim</u>

*Purcell v. United States*, 1 F.3d 932 (9th Cir. 1993) . . . . . . . . . . . . . . . . . 12

*TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915 (9th Cir. 1987) . . . . . . 8, 10

*Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1013 (C.D. Cal. 2014) . . . . 11

*Walters v. Statewide Concrete Barrier, Inc.*,  No. C 04-2559 JSW,
      2006 WL 2527776, *4 (N.D.Cal. Aug. 30, 2006) . . . . . . . . . . . . . . 10

*Oak Harbor Freight Lines, Inc. v. Sears Roebuck, & Co.*,
      513 F.3d 949 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Sea Hawk Seafoods, Inc. v. Exxon Corp.*,
      484 F.3d 1098 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*S.E.C. v. Platforms Wireless Int'l Corp.*,
      617 F.3d 1072 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Gordon*, 393 F.3d 1044 (9th Cir. 2004) . . . . . . . . . . . . . 13

### State

*Amelco Electric v. City of Thousand Oaks,* 27 Cal. 4th 228 (2002) . . . . . . . 8

*Chartered Bank of London v. Chrysler Corp.*,
      115 Cal.App.3d 755 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Diede Const., Inc., v. Monterey Mechanical Co.*,
      125 Cal.App.4th 380, 385 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Helmer v. Bingham Toyota Isuzu*,
      129 Cal.App.4th 1121 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Spates v. Dameron Hospital Assn.*, 114 Cal.App.4th 208 (2003) . . . . . . . . 9

## Rules

Federal Rule of Civil Procedure 55(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . 6

Local Rule, 55-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

## Statutes

28 U.S.C. § 1330(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 1331(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 1603(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 1608 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 1608(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 1608(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

California Civil Code, § 3287(a) 28 U.S.C. § 1608(d) . . . . . . . . . . . . . . . 13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant has chosen not to respond to the Complaint in this matter or otherwise defend itself. Accordingly, the Court entered Defendant's default pursuant to Federal Rule of Civil Procedure 55(a). Plaintiff has spent nearly twenty-five years litigating with Defendant in The Netherlands, England and France, only for judgments to be mooted on and execution efforts rebuffed. Pursuant to the court's January 2020 order, Plaintiff seeks a default judgment for monetary damages in the sum of $25,433,122, plus pre- and post-judgment interest and costs. These damages are supported by evidence, including an expert report, and are consistent with the award that was entered against Defendant in December 2005 in The Netherlands.[1]

Plaintiff meets the factors courts may consider in entering a default judgment. These factors, articulated by the Ninth Circuit in *Eitel v. McCool,* 782 F .2d 1470, 1471-1472, (9th Cir. 1986), include: (1) the possibility of prejudice to the Plaintiff; (2) the merits of Plaintiffs substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring of decisions on the merits.

Pursuant to the allegations of the Complaint, Plaintiff is entitled to relief on the merits.  Further, he has established damages.  The Court, therefore, should enter default judgment in his favor against Defendant in the sum of $25,433,122.

## II.   FACTUAL SUMMARY

### A.    Underlying facts

Plaintiff is the CEO and assignee of Morning Star International Corporation

---

[1] Judgment in the amount of $25,433,122 plus pre- and post-judgment interest and costs was entered against Defendant in the Amsterdam District Court in the Netherland on December 14, 2005.  However, Plaintiff's was unable to levy upon Defendant's assets located in The Netherlands after The Netherlands Supreme Court determined that it lacked jurisdiction.

1

("MSI").  (Declaration of Shutao Lin ("Lin Dec."), ¶ 1.)   In July 1994, Plaintiff was invited by Gabon's Minister of Transport, Tourism and National Parks to come to Gabon to negotiate the sale of scrap metal from the Gabonese railways. (Complaint, ¶ 16.) On August 23, 1994, Defendant provided MSI the exclusive right to collect scrap metal from the Gabonese railways pursuant to a written contract (the "Agreement").[2]  (Exhibit "3" to Complaint.)  The Agreement granted MSI the exclusive right to collect 300,000 tons of scrap for its own account for $20 per metric ton. (Lin Dec., ¶ 9; Complaint, ¶ 21; Exhibit "3" to Complaint.)

On or about November 2, 1994, Plaintiff and thirteen MSI employees arrived in Gabon with equipment and materials to perform. (Lin Dec., 14; Complaint, ¶ 27.) In addition, MSI spent at least $630,000 in research and preparation for performance and spent hundreds of thousands more in labor cost, transportation and supplies. (Lin Dec., ¶ 24; Complaint, ¶ 44.) Plaintiff met with Alexandre Ayo Barro, the President-Director in regard to the project, who provided permission to commence work. (Lin Dec., ¶ 14.)  Work began on November 19, 1994. (Lin Dec., ¶ 14.)

Upon his arrival in Gabon, Plaintiff and the accompanying employees were subjected to harassment by Gabonese officials. (Lin Dec., ¶¶ 15-22; Complaint, ¶¶ 28-40.) For instance, Plaintiff was summoned by the son-in-law of the Gabonese President to meet with General Neree Fernand Odjia, Commander of the Gabonese Presidential Guard in the middle of the night. (Lin Dec., ¶ 31.) General Odjia demanded Plaintiff pay him $10,000,000. (Complaint, ¶ 31.) Plaintiff refused. (Complaint, ¶ 32.)

In the days following Plaintiff's refusal, MSI's employees were trailed and harassed by the Defendant's Presidential Guard. (Complaint, ¶ 35.) Plaintiff was also subjected to further extortion demands from other Gabonese government officials.

---

[2] The Agreement was executed  by Gabonese railway operator Office du Chemin de Fer Transgabonais, a parastatal undertaking considered as a part of the Gabonese Ministry of Transport, Tourism and National Parks.

This included: (1) a $5,000,000 demand from Defendant's incoming Minister of Transportation; (2) a $3 million demand by a Director-General; (3) a $500,000 demand by the Secretary-General of Transportation; and (4) a $50,000 demand by the Defendant's President's physician. (Complaint, ¶ 31.) Plaintiff refused to pay these (illegal) demands. (Complaint, ¶ 32.) General Odjia threatened that unless Plaintiff did so, his employees would be harassed, the work would stop, and that he would be kicked out of the country. (Complaint, ¶ 34.)

In retribution, by way of a letter dated December 2, 1994, Defendant purported to terminate the Agreement. (Complaint, ¶ 36.) Defendant did so on the pretext that MSI had not started its operations and had failed to provide a bank guarantee. (Lin Dec., ¶ 19; Complaint, ¶ 36.) The purported termination was without merit and a breach of the Agreement as work had timely commenced and there was no obligation under the Agreement to issue a bank guarantee. (Lin Dec., ¶ 19.) Moreover, Defendant violated the exclusive right granted to MSI to collect the scrap metal under the Agreement, as it had made a deal on the sale of the same scrap metal with a company owned by one of the ex-wives of Omar Bongo, who was the Gabonese president at the time. (Complaint, ¶ 36.)

Notwithstanding Defendant's purported termination of the Agreement, General Odjia continued to seek to extort Plaintiff and lowered his demand from $10,000,000 to $600,000. (Complaint, ¶ 37.) In mid-December 1994, after Plaintiff refused to pay, General Odjia pointed his pistol at him and threatened his life. (Complaint, ¶¶ 37-38.) Defendant then attached MSI's bank account in Gabon and seized its property. (Complaint, ¶ 61.) In order to protect his employees, Plaintiff sent nearly all his employees home but, at the urging of the U.S. Ambassador to Gabon, stayed behind after the ambassador promised to raise the issues with President Bongo. (Complaint, ¶ 39.) After these efforts provided fruitless, Plaintiff sought to leave the country. (Complaint, ¶ 40.) However, February 14, 1995, Plaintiff was arrested at Libreville Airport in Gabon and his passport was seized.

PLAINTIFF SHUTAO LIN'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT THE GABONESE REPUBLIC

(Complaint, ¶ 40.) Only after the US ambassador intervened, Plaintiff was released four days later. (Complaint, ¶ 40.) Defendant never returned the equipment which was worth at least $630,000 at the time of conversion. (Complaint, ¶ 64.)

## B. Procedural history

Despite the U.S. Ambassador's efforts, Defendant refused to honor its contractual commitments or return properties. Proceedings in the Amsterdam District Court were filed. (Complaint, ¶ 74.) Defendant did not respond, and a default judgment was entered against it in the principal sum of $25,433,122 (plus pre- and post-judgment interest and costs). (Complaint, ¶ 74; Exhibit "2" to Lin Dec.) Those damages were based upon an expert report provided by a renowned U.K. Chartered Engineer. (Exhibit "3" to Lin Dec.) Four years later, Defendant unsuccessfully sought to have default judgment set aside. (Complaint, ¶ 76.) After several additional legal battles related to efforts to levy upon Defendant's assets based in the Netherlands, the Netherlands Court ruled on September 5, 2014 that Plaintiff could not establish that Defendant was the beneficiary of the assets sought to be attached which apparently mooted the 2005 judgment. (Lin Dec., ¶ 28.)

On or about November 2015, MSI levied 27 prejudgment third party attachments against Defendant. (Lin Dec., ¶ 29.) In a February 29, 2016 interlocutory ruling, the Amsterdam District Court, in agreement with MSI, posed a number of questions to the Dutch Supreme Court related to execution. (Lin Dec., ¶ 29.) On September 30, 2016 the Dutch Supreme Court ruled that the burden of proof regarding the absence of any public purpose of the attached goods rests on the creditor and not on the foreign state and that the creditor would be unable to retrieve the destination of goods owned or receivables owed to a foreign state. (Lin Dec., ¶ 29.) Following this ruling, MSI withdrew from the proceedings in the Amsterdam District Court. (Lin Dec., ¶ 29.)

## III. DEFENDANT WAS SERVED AND FAILED TO APPEAR

Because the Motion requests the entry of judgment against a sovereign, 28

4

U.S.C. § 1608(e) requires Plaintiff to provide "evidence satisfactory to the court" of a claim and right to relief. The facts and the law clearly support the entry of judgment in this case.

## A.    The Court has jurisdiction over Defendant

Defendant is a foreign sovereign as defined in 28 U.S.C. § 1603(a). Subject matter jurisdiction over this matter is conferred by 28 U.S.C. § 1330(a) providing "original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state" as to which no immunity may be claimed or under any international agreement.  Personal jurisdiction over a foreign sovereign is conferred by § 1330(b) "where service [of process] has been made under" 28 U.S.C. § 1608. The requirements for personal jurisdiction have been met as Defendant has been served pursuant to 28 U.S.C. § 1608(a)(3), as set forth supra in Section III.B., and the district courts have original jurisdiction pursuant to 28 U.S.C. § 1330(a).

## B.    Defendant was properly served

There are four methods of service of process specified in 28 U.S.C. § 1608(a), and the methods are to be considered sequentially.  The first two methods are not applicable because there is no "special arrangement" between the parties for service of process (28 U.S.C. § 1608(a)(1)) nor is Defendant believed to be a party to any international convention on service of process (28 U.S.C. §1608(a)(2)).  Thus, service was accomplished under 28 U.S.C. §1608(a)(3) "by sending a copy of the summons and complaint and a notice of the suit, together with a translation of each into the official language of the foreign state."  This method requires a "form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs" of the sovereign.

Plaintiff followed the procedures established by this Court for mailing under §1608(a)(3) and arranged for delivery of the filings and translations to be made on the Ministry of Foreign Affairs of Gabon in Libreville, Gabon. The mailing was performed by international courier DHL, from whom a receipt acknowledging

delivery on September 13, 2019 and a Gabonese signature, was filed with the clerk. (ECF Nos. 15, 17 and 20.)

### C.   Defendant failed to appear and has defaulted

Pursuant to 28 U.S.C. § 1608(d), foreign states and their agencies and instrumentalities have 60 days after service of process to file an answer or other responsive pleading. 28 U.S.C. § 1608(d). Defendant was served on September 13, 2019. Its response was due on about November 12, 2019. Defendant failed to plead and has not appeared in this action. The clerk entered Defendant's default pursuant to Rule 55(a) of the Federal Rules of Procedure on January 7, 2020. (ECF Nos. 20 and 21).

### D.   Plaintiff has complied with Local Rule 55-1

Local Rule 55-1 requires that a party moving for default judgment submit a declaration" (1) indicating when and against which party default has been entered; (2) identifying the pleading as to which default has been entered; (3) indicating whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (4) stating that the Service Members Civil Relief Act, 50 App. U.S.C. § 521, does not apply; and (5) affirming that notice has been served on the defaulting party, if required by Rule 55(b)(2).

Plaintiff has complied with these requirements. (Lin Dec, ¶ 31.) Plaintiff has provided a declaration attesting that Defendant's default was entered on January 7, 2020 in regard to the operative complaint that was filed on September 3, 3019. (Lin Dec., ¶ 31.) Plaintiff has also provided a declaration asserting that Defendant is not an infant, incompetent person, member of the military service or otherwise exempt from default judgment under the Service Members Civil Relief Act, 50 App. U.S.C. § 521. (Lin Dec., ¶ 31.) Finally, as Defendant has not appeared in the action, Plaintiff was not required to notify Defendant of its intent to seek this default judgment. (Lin Dec., ¶ 31.) The procedural prerequisites to entry of default judgment are thus

6

1   satisfied. See, e.g., *Elektra Entertainment Group Inc. v. Crawford*, 226 F.R.D. 388,

2   392 (C.D.Cal.2005) (finding that the procedural requirements of Rule 55 and Local

3   Rule 55-1 were met where plaintiff submitted declarations addressing each required

4   factor).

5   **IV.    JUDGMENT SHOULD BE ENTERED AGAINST DEFENDANT**

6        A default judgment is appropriate because of Defendant's failure to appear.

7   Plaintiff's well-pled factual allegations are to be taken as true. *Geddes v. United Fin.*

8   *Grp*, 559 F.2d 557, 560 (9th Cir. 1977) ("upon default[,] the factual allegations of the

9   complaint, except those relating to the amount of damages, will be taken as true").

10  Entry of default constitutes an admission of all well-pleaded allegations of the

11  complaint by the defaulted party, except those relating to damages. *Au Bon Pain*

12  *Corp. v. Artect, Inc*., 653 F.2d 61, 65 (2d Cir. 1985). As shown below, the relevant

13  *Eitel* factors support entry of judgment.

14       **A.    Plaintiff will be prejudiced absent entry of default judgment**

15       Default judgment is the only way to resolve Plaintiff's claims against the

16  Defendant. Without a default judgment, Plaintiff will be prejudiced and without

17  ready recourse for Defendant's breach of the Agreement and the torts it committed.

18  See *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)

19  (finding plaintiff would suffer prejudice without entry of default judgment because

20  they would likely be without other recourse for recovery). At the minimum, if the

21  default judgment is not entered, Plaintiff will be forced to commit time and resources

22  to prosecute a lawsuit in which the Defendant will not participate. See, e.g., *FTC. v.*

23  *1263523 Ontario Inc.*, 205 F. Supp. 2d 205, 208-09 (S.D.N.Y. 2002) (denial of

24  default judgment would be "unfairly prejudicial" to the FTC when

25   defendant failed to respond to a complaint or default motion, or to enter an

26  appearance).

27       **B.    Plaintiff has alleged meritorious claims**

28       The second and third *Eitel* factors permit the Court to evaluate the merits of

PLAINTIFF SHUTAO LIN'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST
DEFENDANT THE GABONESE REPUBLIC

Plaintiff's substantive claims and the sufficiency of its Complaint to determine if the "plaintiff[s] state a claim on which [they] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (internal citations and quotation marks omitted); see also *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.1978) (stating that the issue is whether the allegations in the complaint state a claim upon which plaintiff can recover). The Complaint properly alleges the elements for the three substantive causes of action against the Defendant. Moreover, the Complaint's factual allegations, taken as true because of the default, along with the evidence Plaintiff submits in connection with this Motion, demonstrate the merit of Plaintiff's substantive claims and damages. See *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (noting that district court exceeded the requirements of Fed. R. Civ. P. 55 "by taking extensive evidence on all allegations in the complaint including damages.").

The elements of a claim for breach of contract are: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach and (4) damage as a result of defendant's breach. See *Great American Insurance Co. v. MIVCO Packing Co., LLC*, No. 08-05454, 2009 WL 942390, *6 (N.D.Cal. April 6, 2009) (citing *Amelco Electric v. City of Thousand Oaks*, 27 Cal. 4th 228 (Cal. 2002)). Defendant breached the Agreement and converted MSI's properties as set forth in the Complaint. Plaintiff has pled all of the elements of a contract claim including the existence of the agreement, performance, breach and damages.

Plaintiff has also pled all elements of a promissory estoppel cause of action. Promissory estoppel is invoked where "[a] promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Diede Const., Inc., v. Monterey Mechanical Co.*, 125 Cal.App.4th 380, 385 (2004). The elements of promissory estoppel are (1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages measured by the extent of the

1  obligation assumed and not performed. *Helmer v. Bingham Toyota Isuzu*, 129

2  Cal.App.4th 1121, 1130 fn. 3 (2005); see also *U.S. Ecology*, 129 Cal.App.4th at 901.

3  Based on Defendant's promises, substantial costs were incurred in in transporting

4  employees and equipment to Gabon to prepare for performance. (See e.g. Complaint,

5  ¶ 27.)

6        Further, Plaintiff has established that Defendant converted over $630,000 in

7  equipment and assets. (Complaint, ¶¶ 61-64.) The elements of a conversion cause of

8  action are: (1) plaintiff's ownership or right to possession of personal property at the

9  time of the conversion; (2) defendant's conversion by a wrongful act or disposition

10  of  property rights and (3) damages. *Spates v. Dameron Hospital Assn.*, 114

11  Cal.App.4th 208, 221 (2003); *Chartered Bank of London v. Chrysler Corp.,* (1981)

12  115 Cal.App.3d 755. Plaintiff has alleged that defendant unlawfully took possession

13  of equipment and assets such as cranes, forklifts, and bank accounts. (Complaint, ¶

14  61.)  Plaintiff alleges that Defendant continued to exercise dominion over the

15  equipment and assets and has never returned them. (Complaint, ¶¶ 62, 64.) That

16  equipment was worth at least $630,000 in 1994/1995 money.  (Complaint, ¶ 63; Lin

17  Dec., ¶ 24.)  That was the sum awarded by the Netherland court in 2005 and what

18  should be awarded now. (Exhibit "2" to Lin Dec.)

19      **C.**   ***Eitel* factors four through seven also weigh in favor of judgment**

20      The remaining *Eitel* factors allow the Court to consider the sum of money

21  at stake, the possibility of a dispute concerning material facts, whether the default

22  was due to excusable neglect, and the policies favoring decisions on the merits.

23  *Eitel*, 782 F .2d at 1471-1472. Each weighs in favor of granting this motion.

24      **1.**   **Amount at stake**

25      The fourth *Eitel* factor balances "the amount of money at stake in relation to

26  the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. "This

27  requires that the court assess whether the recovery sought is proportional to the

28

PLAINTIFF SHUTAO LIN'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST
DEFENDANT THE GABONESE REPUBLIC

harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enters.*, *Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010); see also, *Walters v. Statewide Concrete Barrier, Inc.,* No. C 04-2559 JSW, 2006 WL 2527776, *4 (N.D.Cal. Aug. 30, 2006) ("If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted").

The monetary relief sought, $25,433,122 (plus interest), is directly proportional because it is the amount of damages awarded in the 2005 judgment, based upon the expert report that the Netherlands court relied upon. As set forth in that expert report attached as Exhibit 3 to Plaintiff's Declaration, economic damages of $24,700,000 was calculated based upon the 300,000 metric tons of scrap metal that was to be retrieved. The methodology of that computation was set forth in the expert report and adopted by the Dutch court. The Dutch court also awarded $630,000 and $103,122 plus interest based upon the expert report. (Exhibit "2" to Lin Dec.)

## 2.    Possibility of dispute

The fifth *Eitel* factor is the possibility of a dispute concerning material facts. Because the factual allegations set forth in the Complaint are presumed true and the Defendant has not appeared to challenge them, there is no dispute concerning material facts. See *Pepsico*, 238 F.Supp.2d at 1177 ("Upon entry of default, all well pleaded facts in the complaint are taken as true, except those relating to damages," citing *TeleVideo Sys., Inc.,* 828 F.2d at 917-918).  Since Plaintiff has supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment.  Indeed, the facts do not appear to have ever been substantively disputed by Defendant who has never sought to dispute the underlying facts that give rise to this action, in lieu of frustrating Plaintiff's efforts to collect.

PLAINTIFF SHUTAO LIN'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT THE GABONESE REPUBLIC

### 3.    Possibility of excusable neglect

The sixth *Eitel* factor considers whether the default was due to excusable neglect. Here, as noted above, the Defendant was appropriately served. Indeed, it appears to be Defendant's practice of not appearing to respond to Plaintiff's claims or, for that matter, in actions filed by other parties against this same Defendant in United States courts. (Exhibits "5" and "6" to Lin Dec.) Despite having been served over five months ago, Defendant has not taken any steps to defend itself or respond to the allegations in the Complaint. Given these circumstances, there can be no excusable neglect. *FTC v. Ebusiness, LLC*, 2016 WL 3704489 at *6 (C.D. Cal. July 12, 2016).

### 4.    Policy for deciding cases on the merits

The seventh *Eitel* factor considers the policy that "[c]ases should be decided upon their merits whenever reasonably possible." See *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1013 (C.D. Cal. 2014) (quoting *Eitel*, 782 F.2d at 1472). "The mere enactment of Rule 55(b) indicates, however, that this preference, standing alone, is not dispositive . . .. and does not preclude the entry of default judgment." *Id*. (internal quotation marks and citations omitted). Here, Defendant's "failure to answer [the] Complaint make[s] a decision on the merits impractical, if not impossible." *PepsiCo,* 238 F. Supp. 2d at 1177. Therefore, since the Defendant failed to appear and defend this action, the seventh *Eitel* factor does not preclude the entry of default judgment against them. *Vogel*, 992 F. Supp. 2d at 1013.

### D.    The monetary relief plaintiff seeks is fair and reasonable

### 1.    Plaintiff has established damages

Although the Court has discretion to hold a hearing to determine the monetary damages, it is not necessary here. In fact, courts generally decline conducting such hearings when damages are established by declaration or documentation. See e.g., *FTC v. 1263523 Ontario, Inc*., 205 F. Supp. 2d 205, 211(S.D.N.Y. 2002) (holding

11

that default judgment of $10 million in equitable monetary relief was sufficiently supported by a declaration from Defendants' payment processor indicating revenue); *FTC v. Hope for Car Owners, LLC*, No. 2:12-cv-778, 2013 WL 322895, at *5-7 (E.D. Cal. Jan. 24, 2013) (recommending entry of order granting default judgment application without hearing, when monetary award proposed by FTC was supported by documentation from Defendants' financial institutions); *Good Ebusiness, LLC*, 2016 WL 3704489 at *7 (granting default judgment based on accountant's declaration).

Plaintiff seeks principal damages in the amount that the Netherlands court awarded in 2005 that was based upon the expert report submitted. That report, provided by William George Prast, a Chartered Engineer (CEng) in the United Kingdom who was registered as a European Engineer with the European Federation of National Engineering Associations, opined that the economic damages incurred, measured in 1994-1995 dollars, was $24,700,000 (for the 300,000 metric tons of scrap metal that was to be provided pursuant to the Agreement. (Exhibit "3" to Lin Dec.)  Simple interest on that amount from December 2, 1994 to through December 2, 2019 is $43,125,000.

In addition, Plaintiff is entitled to damages in the principal amount of $630,000 for the monies expended in preparing for performance and simple interest thereon in the $1,102,500 from December 2, 1994 to through December 2, 2019.

Finally, Plaintiff is entitled to damages in the principal amount of $103,122 for property converted and simple interest in the amount of $180,463.50 from February 16, 1995 through February 16, 2020.

## 2. Plaintiff is entitled to pre-judgment interest

Even ignoring the fact that the Netherlands court had no problem awarding prejudgment interest, such is proper here. The court may award prejudgment interest in consideration of the equities of the case.  "Awards of pre-judgment interest are governed by considerations of fairness and are awarded when it is necessary to make

the wronged party whole." *Purcell v. United States*, 1 F.3d 932, 942-943 (9th Cir. 1993) (citation omitted). Prejudgment interest is intended "to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered." *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013).  Further, pursuant to California Civil Code Section 3287(a), "[a] person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day[.]" Whether to award prejudgment interest is in "the district court's sound discretion." *Id.*

Here, the award of interest is necessary to make Plaintiff whole. He has traveled the globe seeking redress from Defendant's conduct and threats of violence and damages are capable of calculation when Defendant repudiated the Agreement.

### 3.     The court should adopt a seven percent per annum interest rate

The correct rate of prejudgment interest in federal court depends on the nature of the claims.  "'Prejudgment interest is a substantive aspect of a plaintiff's claim, rather than a merely procedural mechanism.' . . .  State law generally governs awards of prejudgment interest in diversity actions, but federal law may apply to the calculation of prejudgment interest when a substantive claim derives from federal law alone." *Oak Harbor Freight Lines, Inc. v. Sears Roebuck, & Co.*, 513 F.3d 949, 961 (9th Cir. 2008) (quoting *Sea Hawk Seafoods, Inc. v. Exxon Corp.*, 484 F.3d 1098, 1101 (9th Cir. 2007)). Even in a federal question case, where the federal interest rate ordinarily applies, the court may choose a different rate if "the equities of a particular case demand a different rate.'" *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1099 (9th Cir. 2010) (citation omitted); see *United States v. Gordon*, 393 F.3d 1044, 1063 n.12 (9th Cir. 2004) ("Under federal law the rate of prejudgment interest is the Treasury Bill rate as defined in 28 U.S.C. § 1961 unless the district court finds on substantial evidence that a different prejudgment interest rate is appropriate.").

1

2        Here, the California prejudgment interest rate should be used in light of the

3   fact that Plaintiff's substantive claims are based on state law and in order to address

4   the significant damages suffered.

5   **V.    CONCLUSION**

6        Therefore, the Plaintiff requests that the Court grant the Motion for Default

7   Judgment and enter Judgment against the Defendant in the sum of $25,433,122, plus

8   pre- and post-judgment interest and costs.

9   Date:  February 24, 2020          LAW OFFICES OF KYLE KUBISCH

10                                     By: _____/s/ Kyle Kubisch_____

11                                         KYLE KUBISCH
                                           Attorney for Plaintiff
12                                         SHUTAO LIN

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF SHUTAO LIN'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST
DEFENDANT THE GABONESE REPUBLIC