LAW OFFICES OF KYLE KUBISCH
Kyle Kubisch (State Bar No. 203981)
2600 Michelson Drive, Suite 1700
Irvine, CA 92612
Telephone: 949-225-4475
Facsimile: 949-225-4476
kkubisch@kubischlaw.com

Attorneys for Plaintiff
SHUTAO LIN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHUTAO LIN, | Case No. 8:19-cv-01677-JVS-KES |
| Plaintiff, | **PLAINTIFF SHUTAO LIN'S NOTICE OF MOTION AND AMENDED MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT THE GABONESE REPUBLIC; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| THE GABONESE REPUBLIC, | |
| Defendant. | **[Filed Concurrently with Declaration of Shutao Lin]** |

Please take notice Plaintiff Shutao Lin ("Plaintiff") will move for default judgment against defendant The Gabonese Republic ("Defendant"). Default judgment is appropriate pursuant to Federal Rule of Civil Procedure 55(b) and Local Rule 55-1 because the Defendant has failed to defend itself in this action the court has already entered default against Defendant.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Shutao Lin and exhibits attached thereto, the previously filed Notice of Intention to Raise

1   Issues of Foreign Law, and the pleadings and papers on file in this action.

2   Date:  July 6, 2020          LAW OFFICES OF KYLE KUBISCH

3                                         By:  _____/s/ Kyle Kubisch_____

4                                                KYLE KUBISCH
                                                 Attorney for Plaintiff
5                                                SHUTAO LIN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF SHUTAO LIN'S NOTICE OF MOTION AND AMENDED MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT THE GABONESE REPUBLIC

# **TABLE OF CONTENTS**

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   FACTUAL SUMMARY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
      A.   Underlying facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
      B.   Procedural history  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      C.   Gabonese Law  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.  DEFENDANT WAS SERVED AND FAILED TO APPEAR  . . . . . 6
      A.   The Court has jurisdiction over Defendant  . . . . . . . . . . . . . . 6
      B.   Defendant was properly served  . . . . . . . . . . . . . . . . . . . . . . . 6
      C.   Defendant failed to appear and has defaulted . . . . . . . . . . . . . 7
      D.   Plaintiff has complied with Local Rule 55 . . . . . . . . . . . . . . . 7

IV.   JUDGMENT SHOULD BE ENTERED AGAINST
      DEFENDANT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      A.   Plaintiff will be prejudiced absent entry of
           default judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      B.   Plaintiff has alleged meritorious claims . . . . . . . . . . . . . . . . . 9
           1.   Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
           2.   The limitations period has not run  . . . . . . . . . . . . . . . 10
      C.   Eitel factors four through seven also weigh in favor
           of judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
           1.   Amount at stake  . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
           2.   Possibility of dispute  . . . . . . . . . . . . . . . . . . . . . . . 12
           3.   Possibility of excusable neglect  . . . . . . . . . . . . . . . . 13
           4.   Policy for deciding cases on the merits . . . . . . . . . . . 13
      D.   The monetary relief plaintiff seeks is fair and reasonable  . . . 13
           1.   Plaintiff has established damages . . . . . . . . . . . . . . . . 13
           2.   Plaintiff is entitled to pre-judgment interest . . . . . . . . 14
           3.   The court should adopt a 7% per annum
                interest rate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## Cases

### Federal

*Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61 (2d Cir. 1985) . . . . . . . . . . 8

*Barnard v. Theobald*, 721 F.3d 1069 (9th Cir. 2013) . . . . . . . . . . . . . . . . 15

*Danning v. Lavine*, 572 F.2d 1386 (9th Cir.1978) . . . . . . . . . . . . . . . . . . . 9

*Eitel v. McCool*, 782 F .2d 1470 (9th Cir. 1986) . . . . . . . . . . . . . . . . . <u>passim</u>

*Elektra Entertainment Group Inc. v. Crawford*,
    226 F.R.D. 388 (C.D.Cal.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*FTC. v. 1263523 Ontario Inc.*,
    205 F. Supp. 2d 205 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . 8, 13

*FTC v. Good Ebusiness, LLC*, 2016 WL 3704489
    (C.D. Cal. July 12, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*FTC v. Hope for Car Owners, LLC*,  No. 2:12-cv-778,
    2013 WL 322895, at *5-7 (E.D. Cal. Jan. 24, 2013) . . . . . . . . . . . . 14

*Geddes v. United Fin. Grp*, 559 F.2d 557 (9th Cir. 1977) . . . . . . . . . . . . . 8

*Landstar Ranger, Inc. v. Parth Enters., Inc.*,
    725 F. Supp. 2d 916 (C.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . 12

*PepsiCo, Inc. v. Cal. Sec. Cans*,
    238 F. Supp. 2d 1172 (C.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . <u>passim</u>

*Purcell v. United States*, 1 F.3d 932 (9th Cir. 1993) . . . . . . . . . . . . . . . . . 14

*TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915 (9th Cir. 1987) . . . . . . 9, 12

*Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1013 (C.D. Cal. 2014) . . . . 13

*Walters v. Statewide Concrete Barrier, Inc.*,  No. C 04-2559 JSW,
      2006 WL 2527776, *4 (N.D.Cal. Aug. 30, 2006) . . . . . . . . . . . . . . 12

*Oak Harbor Freight Lines, Inc. v. Sears Roebuck, & Co.*,
      513 F.3d 949 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Sea Hawk Seafoods, Inc. v. Exxon Corp.*,
      484 F.3d 1098 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*S.E.C. v. Platforms Wireless Int'l Corp.*,
      617 F.3d 1072 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

### **Foreign Authorities**

 Civ. 1 ère, 15 javier 2020, Ñ de pourvoi: 18:20102 . . . . . . . . . . . . . . . . . . 10

French Civil Code, Article 1231-6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

French Civil Code, Article 1147 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

French Civil Code, Article 1149 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Gabonese Penal Code, Article 460 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Napoleonic Civil Code of 1804, Article 1134 . . . . . . . . . . . . . . . . . . . . . . . 9

Napoleonic Civil Code of 1804, Article 1147 . . . . . . . . . . . . . . . . . . . . . . . 9

OHADA, Uniform Act on General Commercial Law, Article 16 . . . . . 5, 10

OHADA, Uniform Act on General Commercial Law, Article 19  . . . . . . . . 5

OHADA, Uniform Act on General Commercial Law, Article 20 . . . . . 5, 10

OHADA, Uniform Act on General Commercial Law, Article 21. . . . . . 5, 10

OHADA, Uniform Act on General Commercial Law, Article 22  . . 5, 10, 11

OHADA, Uniform Act on General Commercial Law, Article 23 . . . . <u>passim</u>

OHADA, Uniform Act on General Commercial Law, Article 24 . . . . . . 5, 6

OHADA, Uniform Act on General Commercial Law, Article 25 . . . . . . 5, 6

### <u>Miscellaneous</u>

CIA World Factbook,
   www.cia.gov/library/publications/the-world-factbook/geos/gb.html . 5

### <u>Rules</u>

Federal Rule of Civil Procedure 55(b)(2) . . . . . . . . . . . . . . . . . . . . . . . 7, 13

Local Rule, 55-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

### <u>Statutes</u>

28 U.S.C. § 1330(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 1331(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

28 U.S.C. § 1603(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

28 U.S.C. § 1608 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 1608(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

28 U.S.C. § 1608(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendant has chosen not to respond to the Complaint or otherwise defend itself. Accordingly, Plaintiff seeks a default judgment in the principal sum of $25,433,122, plus pre-judgment interest of $44,407,963.50, post-judgment interest and costs. These damages are supported by evidence, including an expert report, and are consistent with the judgment entered against Defendant in December 2005.

Plaintiff has spent over twenty years litigating with Defendant throughout the world, including the International Chamber of Commerce in France, Amsterdam, Rotterdam, and the Hague. These efforts included a multi-million-dollar judgment entered in Plaintiff's favor against Defendant that was vacated by the Netherlands Supreme Court in 2014. Pursuant to Articles 16, 22 and 23 of the OHADA (to which the Republic of Gabon subscribes), Plaintiff timely initiated this action last year.

Plaintiff meets the factors courts consider in entering a default judgment. These factors, articulated in *Eitel v. McCool,* 782 F.2d 1470, 1471-1472 (9th Cir. 1986), include: (1) the possibility of prejudice to Plaintiff; (2) the merits of Plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring a decision on the merits. Here, the court has already determined that Plaintiff has met five of those seven factors and established the damages and interest sought herein. (See ECF No. 32.) In order to address the court's remaining concern, Plaintiff provides documentation demonstrating that his claims are not time-barred. (See Exhibits "5" to "10" to Declaration of Shutao Lin ("Lin Dec.").)

### II.   FACTUAL SUMMARY

#### A.   Underlying facts

Plaintiff is the CEO and assignee of Morning Star International Corporation ("MSI"). (Lin Dec.", ¶ 1.) In July 1994, Plaintiff was invited by Gabon's Minister of

Transport, Tourism and National Parks to come to Gabon to negotiate the sale of scrap metal from the Gabonese railways. (Complaint, ¶ 16.) On August 23, 1994, Defendant provided MSI the exclusive right to collect scrap metal from Gabonese railways pursuant to a written contract (the "Agreement"). (Exhibit "3" to Complaint; Exhibit "1" to Lin Dec.) The Agreement granted MSI the exclusive right to collect 300,000 tons of scrap for its own account for $20 per metric ton. (Lin Dec., ¶ 9; Exhibit "3" to Complaint; Exhibit "1" to Lin Dec.) The Agreement called for Gabonese law to be utilized. (Exhibit "3" to Complaint; Exhibit "1" to Lin Dec.)

On or about November 2, 1994, Plaintiff and thirteen MSI employees arrived in Gabon with equipment and materials to perform. (Lin Dec., 14; Complaint, ¶ 27.) MSI spent at least $630,000 in research and preparation for performance and spent hundreds of thousands more in labor cost, transportation and supplies. (Lin Dec., ¶ 24; Complaint, ¶ 44.) Plaintiff met with Alexandre Ayo Barro, the President-Director in regard to the project, who provided permission to commence work. (Lin Dec., ¶ 14.) Work began on November 19, 1994. (Lin Dec., ¶ 14.)

Upon his arrival in Gabon, Plaintiff and accompanying employees were subjected to harassment by Gabonese officials. (Lin Dec., ¶¶ 15-22; Complaint, ¶¶ 28-40.) For instance, Plaintiff was summoned to meet with General Neree Fernand Odjia, Commander of the Gabonese Presidential Guard in the middle of the night. (Complaint, ¶ 31.) General Odjia demanded Plaintiff pay him $10 million. (Complaint, ¶ 31.) Plaintiff refused. (Complaint, ¶ 32.)

In the days following Plaintiff's refusal, MSI's employees were trailed and harassed by Defendant's Presidential Guard. (Complaint, ¶ 35.) Plaintiff was also subjected to further extortion demands from other Gabonese government officials. This included: (1) a $5 million demand from Defendant's incoming Minister of Transportation; (2) a $3 million demand by a Director-General; (3) a $500,000 demand by the Secretary-General of Transportation; and (4) a $50,000 demand by the Defendant's President's physician. (Complaint, ¶ 31.) Plaintiff refused to pay

these (illegal) demands. (Complaint, ¶ 32.)

In retribution, by way of a letter dated December 2, 1994, Defendant purported to terminate the Agreement. (Complaint, ¶ 36.) Defendant did so on the pretext that MSI had not started its operations and had failed to provide a bank guarantee. (Lin Dec., ¶ 19; Complaint, ¶ 36.) The purported termination was without merit and a breach of the Agreement as work had timely commenced and there was no obligation under the Agreement to issue a bank guarantee. (Lin Dec., ¶ 19.) Moreover, Defendant violated the exclusive right granted to MSI to collect the scrap metal under the Agreement, as it had agreed to sell the same scrap metal with a company owned by one of the ex-wives of the Gabonese president. (Complaint, ¶ 36.)

Notwithstanding Defendant's purported termination of the Agreement, General Odjia continued to seek to extort Plaintiff and lowered his demand from $10 million $600 thousand. (Complaint, ¶ 37.)  In mid-December 1994, after Plaintiff refused to pay, General Odjia pointed his pistol at him and threatened his life. (Complaint, ¶¶ 37-38.) Defendant then attached MSI's bank account in Gabon and seized its property. (Complaint, ¶ 61.) In order to protect his employees, Plaintiff sent nearly all them home.(Complaint, ¶ 39.) However, on February 14, 1995, Plaintiff was arrested at Libreville Airport in Gabon and his passport was seized. (Complaint, ¶ 40.) Plaintiff was released four days later after the U.S. ambassador intervened,.  (Complaint, ¶ 40.)  Defendant never returned the equipment which was worth at least $630,000 at the time of conversion. (Complaint, ¶ 64.)

**B.    Procedural history**

From 1995 through 2016, MSI was generally involved in some form of legal proceedings against Defendant. (Lin Dec., ¶ 26.)  For instance, on or about October 30, 1995, MSI petitioned, and thereafter obtained, a $38 million prejudgment writ of attachment against Defendant in Rotterdam, Netherlands. (Lin Dec., ¶ 26.) For several years thereafter, MSI sought to attach assets related by Defendant. (Lin Dec., ¶ 26.)

In addition, in late 2015/early 2016, Plaintiff petitioned to initiate proceedings in the Hague against Defendant. The Hague declined to accept the petition on or about February 15, 2016. (Lin Dec., ¶ 27.)  Thereafter, on May 28, 1996, a formal conciliation process commenced whereby the statute of limitations were tolled until the conciliation proceedings were closed on July 17, 1996. (Lin Dec., ¶ 28.)

In the interim, on or about August 6,1997, a demand for arbitration was filed with the International Chamber of Commerce ("ICC"). (Lin Dec., ¶ 29.) The ICC advised that parties needed to agree upon an odd number of arbitrators. (Lin Dec., ¶ 29.) No agreement was reached, and the arbitration was closed on or about July 28, 1998. (Lin Dec., ¶ 29.)

In addition to the proceedings successfully initiated against Defendant in Rotterdam, MSI also commenced proceedings in the Amsterdam District Court in January 2001. (Lin Dec. ¶ 30.) On March 2001, the Netherlands Appellate Court permitted MSI to attach Defendant's assets. (Lin Dec. ¶ 30.) Over the next several years, MSI continued to seek to attach assets. (Lin Dec. ¶ 30.) Ultimately, on December 14, 2005, judgment was entered against Defendant in the principal sum of $25,433,122 (plus pre and post judgment interest and costs). (Complaint, ¶ 74; Exhibit "3" to Lin Dec.) Those damages were based upon an expert report provided by a renowned U.K. Chartered Engineer. (Exhibit "4" to Lin Dec.)

In 2009, Defendant sought to have the 2005 judgment set aside. (Complaint, ¶ 76; Lin Dec., ¶ 33.)  MSI filed an opposition brief on or about November 25, 2009. (Exhibit "5" to Lin Dec.) Defendant's appeal was denied by the Netherlands District Court on December 8, 2010 pursuant to a "Judgment on Objection." (Exhibit "6" to Lin Dec.) However, after several additional legal battles related to efforts to levy upon Defendant's assets based in the Netherlands, the Netherlands Supreme Court ruled on September 5, 2014 that it could not be established that Defendant was the beneficiary of the assets and vacated the 2005 judgment. (Exhibit "7" to Lin Dec.)

On or about November 16, 2015, fourteen months after the 2005 judgment was vacated, MSI levied a number of prejudgment third party attachments against Defendant by way of a Preventive Leave Garnishment Application" filed on or about November 16, 2015. (Exhibit "8" to Lin Dec.) In a February 29, 2016 interlocutory ruling, the Amsterdam District Court, in agreement with MSI, asked a number of prejudicial questions on immunity of execution to the Dutch Supreme Court. (Lin Dec., ¶ 35; Exhibit "9" to Lin Dec.) However, on September 30, 2016 the Dutch Supreme Court overruled the Amsterdam District and precluded the requested provisional relief. (Lin Dec., ¶ 35; Exhibit "10" to Lin Dec.)

### C.     Gabonese law

The legal system of Gabon utilizes French law and their own customary laws. (CIA World Factbook, www.cia.gov/library/publications/the-world-factbook/geos/gb.html.) As the case of many ex-French colonies, the Napoleonic Civil Code of 1804 traditionally governs many issues of contract law in Gabon.[1] In addition, Gabon subscribes to the Organization for the Harmonization of Business law in Africa ("OHADA") that modernizes and harmonies business dealings.

Three particular aspects of the OHADA are of significance here. The first is Article 16 of the OHADA that provides for a five-year statute of limitations period for commercial claims such as Plaintiff's three substantive causes of action.

The second are Articles 19, 20, and 21 of the OHADA that provide for the tolling of the state of limitations in regard to events such as such as "conciliation" (mediation), agreements, force majeure acts, discovery stays and, pursuant to French authority that the Republic of Gabon generally follows, arbitration.

The third are Articles 22, 23, 24 and 25 that provide for an " interruption" and "new prescriptive period" for events such as the commencement of legal proceedings (Article 23); legal proceedings for "provisional measures" (Article 23), when a court

---

[1] Plaintiff has filed a Notice of Intention to Raise Issues of Foreign Law. (ECF 30.)

refuses jurisdiction (Article 23), when an action is terminated by a court (Article 23),
enforcement acts (Article 24), the filing of claim against a joint debtor (Article 25),
an act of enforcement against a joint debtor (Article 25), or an acknowledgment
(admission) by a debtor (Article 25).

Of significant import, Articles 22 and 23 of the OHADA provide for a new
five-year statute in instances where, as here, the Netherlands court in September
2014 vacated the judgment Plaintiff had obtained against the Defendant.

## III.   DEFENDANT WAS SERVED AND FAILED TO APPEAR

Because the Motion requests the entry of judgment against a sovereign, 28
U.S.C. § 1608(e) requires Plaintiff to provide "evidence satisfactory to the court" of
a claim and right to relief. The facts and the law support default judgment.

### A.     The Court has jurisdiction over Defendant

Defendant is a foreign sovereign as defined in 28 U.S.C. § 1603(a). Subject
matter jurisdiction is conferred by 28 U.S.C. § 1330(a) providing "original
jurisdiction without regard to amount in controversy of any nonjury civil action
against a foreign state" as to which no immunity may be claimed or under any
international agreement. Personal jurisdiction over a foreign sovereign is conferred
by §1330(b) "where service [of process] has been made under" 28 U.S.C. § 1608.
The requirements for personal jurisdiction have been met as Defendant has been
served pursuant to 28 U.S.C. § 1608(a)(3) and the court has original jurisdiction.

### B.     Defendant was properly served

There are four methods of service of process specified in 28 U.S.C. § 1608(a),
and the methods are to be considered sequentially. The first two methods are not
applicable because there is no "special arrangement" between the parties for service
of process (28 U.S.C. § 1608(a)(1)) nor is Defendant believed to be a party to any
international convention on service of process (28 U.S.C. §1608(a)(2)).  Thus,
service was accomplished under 28 U.S.C. §1608(a)(3) "by sending a copy of the
summons and complaint and a notice of the suit, together with a translation of each

6

PLAINTIFF SHUTAO LIN'S NOTICE OF AMENDED MOTION AND AMENDED MOTION FOR DEFAULT
JUDGMENT AGAINST DEFENDANT THE GABONESE REPUBLIC

into the official language of the foreign state." This method requires a "form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs" of the sovereign.

Plaintiff followed the procedures established by this Court for mailing under §1608(a)(3) and arranged for delivery of the filings and translations to be made on the Ministry of Foreign Affairs of Gabon in Libreville, Gabon. The mailing was performed by international courier DHL, from whom a receipt acknowledging delivery on September 13, 2019 and a Gabonese signature, was filed with the clerk. (ECF Nos. 15, 17 and 20.)

### C.     Defendant failed to appear and has defaulted

Pursuant to 28 U.S.C. § 1608(d), foreign states and their agencies and instrumentalities have 60 days after service of process to file a responsive pleading. Defendant was served on September 13, 2019. Its response was due on or about November 12, 2019. Defendant failed to plead and has not appeared in this action. The clerk entered Defendant's default pursuant to Rule 55(a) of the Federal Rules of Procedure on January 7, 2020. (ECF Nos. 20 and 21).

### D.     Plaintiff has complied with Local Rule 55-1

Local Rule 55-1 requires that a party moving for default judgment submit a declaration" (1) indicating when and against which party default has been entered; (2) identifying the pleading as to which default has been entered; (3) indicating whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (4) stating that the Service Members Civil Relief Act, 50 App. U.S.C. § 521, does not apply; and (5) affirming that notice has been served on the defaulting party, if required by Rule 55(b)(2).

Plaintiff has complied with these requirements. (Lin Dec, ¶ 38.) Plaintiff has provided a declaration attesting that Defendant's default was entered on January 7, 2020 in regard to the operative complaint that was filed on September 3, 3019. (Lin

Dec., ¶ 38.) Plaintiff has also provided a declaration asserting that Defendant is not an infant, incompetent person, member of the military service or otherwise exempt from default judgment under the Service Members Civil Relief Act, 50 App. U.S.C. § 521. (Lin Dec., ¶ 35.) Finally, as Defendant has not appeared, Plaintiff was not required to provide notice of this motion. (Lin Dec., ¶ 38.) The procedural prerequisites to entry of default judgment are thus satisfied. See, e.g., *Elektra Entertainment Group Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D.Cal.2005) (finding that the procedural requirements of Rule 55 and Local Rule 55-1 were met where plaintiff submitted declarations addressing each required factor).

## IV.   JUDGMENT SHOULD BE ENTERED AGAINST DEFENDANT

A default judgment is appropriate because of Defendant's failure to appear. Plaintiff's well-pled factual allegations are to be taken as true. *Geddes v. United Fin. Grp*, 559 F.2d 557, 560 (9th Cir. 1977) ("upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true"). Entry of default constitutes an admission of all well-pleaded allegations of the Complaint by the defaulted party, except those relating to damages. *Au Bon Pain Corp. v. Artect, Inc*., 653 F.2d 61, 65 (2d Cir. 1985). As shown below, the relevant *Eitel* factors support entry of judgment.

### A.   Plaintiff will be prejudiced absent entry of default judgment

Default judgment is the only way to resolve Plaintiff's claims against the Defendant. Without a default judgment, Plaintiff will be prejudiced and without ready recourse for Defendant's breach of the Agreement and the torts it committed. See *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (finding plaintiff would suffer prejudice without entry of default judgment because they would likely be without other recourse for recovery). At the minimum, if the default judgment is not entered, Plaintiff will be forced to commit time and resources to prosecute a lawsuit in which the Defendant will not participate. See, e.g., *FTC. v. 1263523 Ontario Inc.*, 205 F. Supp. 2d 205, 208-09 (S.D.N.Y. 2002) (denial of

default judgment would be "unfairly prejudicial" to the FTC when defendant failed to respond to a complaint or default motion, or to enter an appearance).

### B.      Plaintiff has alleged meritorious claims

#### 1.      Law

The second and third *Eitel* factors permit the Court to evaluate the merits of Plaintiff's substantive claims[2] and the sufficiency of the Complaint to determine if the "plaintiff[s] state a claim on which [they] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (internal citations and quotation marks omitted); see also *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.1978). The Complaint properly alleges the elements for the three substantive causes of action against the Defendant. The factual allegations, taken as true because of the default, along with the evidence Plaintiff submits in connection with this Motion, demonstrate the merit of Plaintiff's substantive claims and damages. See *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (noting that district court exceeded the requirements of Fed. R. Civ. P. 55 "by taking extensive evidence on all allegations in the complaint including damages.").

The elements of claims for breaches of contract under Gabonese law emanates from the articles 1134 and 1147 of the old Gabonese Civil Code (Napoleon Code of 1804). They are generally the same as those required to establish a breach under California substantive law and include: (1) the existence of a contract between the parties; (2) non-performance by his contracting partner (total or partial non-performance); (3) the damages caused; and (4) the causal link between the non-performance of the obligation by the debtor contracting party and the damage caused.  Defendant breached the Agreement and converted MSI's properties as set forth in the Complaint. Plaintiff has pled all of the elements of a contract claim

---

[2] Plaintiff, while *pro se*, alleged a fourth cause of action pursuant to the Uniform Foreign-Country Money Judgments Recognition Act in regard to a 2010 judgment. The 2010 judgment referenced is the December 8, 2010 "Judgment on Objection" that was a reaffirmation of the 2005. judgment  Plaintiff acknowledges that the fourth cause of action cannot proceed because the 2005 judgment was later vacated.

including, the existence of the agreement, performance, breach, and damages. Further, Defendant converted over $630,000 in equipment and assets. (Complaint, ¶¶ 61-64.) Conversion or fraudulent conversion of the property of others is proscribed by Article 460 of the Gabonese Penal Code, et *seq*. In addition to possible criminal sanctions, the aggrieved party can recover damages and, in this instance, because the acts relate to a merchant, falls within Article 16 of the OHADA (providing for a five-year statute of limitation). Plaintiff has alleged that defendant unlawfully took possession of equipment and assets such as cranes, forklifts, and bank accounts. (Complaint, ¶ 61.) Plaintiff alleges that Defendant continued to exercise dominion over the equipment and assets and has never returned them. (Complaint, ¶¶ 62, 64.) That equipment was worth at least $630,000 in 1994/1995 money. (Complaint, ¶ 63.) That was the sum awarded by the Netherland in 2005 and what should be awarded now. (Exhibit "3" to Lin Dec.)

### 2. The limitations period has not run

The statute of limitations for Plaintiff's claims under Gabonese law is five years. (Article 16 of the OHADA.) As set forth in Section 2.C. *supra*, the OHADA expressly provides for both a "suspension" (tolling)[3] and for an "interruption" coupled with a "new prescriptive period." Because  Plaintiff was in litigation of some sort with Defendant from 1995 to 2016, his claims are not time-barred.  For instance, utilizing December 2, 1994—the day Defendant purported to terminate the  Agreement—as the date of the breach, litigation would need to have been initiated by December 1999 (assuming the statute had not otherwise been suspended).

Litigation was commenced in October 1995 when MSI filed a petition and

---

[3] The statute of limitations would have extended by thirteen months pursuant to Articles 20 and 21 of the OHADA as a conciliation proceeding took place from May 28, 1996 to July 17, 1996 and an arbitration was open from August 6, 1997 to July 28, 1998.  (See Lin Dec., ¶¶ 28 and 29.) Article 22 expressly provides that conciliation proceedings "suspend" the proscriptive period.  The First Civil Chamber of the French Court of Appeal recently clarified that a request for arbitration in accordance a contractual provision interrupts the proscriptive period and provides for a new period.  (Appeal number: 18-20102 ECLI: FR: CCASS: 2020: C100033.)

successfully obtained a $38 million prejudgment writ of attachment against Defendant. (Lin Dec., ¶ 26.) Pursuant to Articles 22 and 23 of the OHADA, that proceeding caused an "interruption of the prescriptive period" and a "new prescriptive period of the same duration as the initial prescription period . . ."  MSI also initiated legal proceedings in the Hague. When MSI's petition was denied in February 1996, a new five-year period was created pursuant to Articles 22 and 23.

In January 2001, while continuing to pursue Defendant pursuant to the 1995 Rotterdam proceeding, MSI initiated proceedings in the Amsterdam District Court, Netherlands seeking another prejudgment attachment. (Lin Dec., ¶ 30.) This was well within the new proscriptive period afforded by Articles 22 and 23 of the OHADA. Further, even if legal proceedings had not been initiated, such was within the original five period as extended by the 1996 conciliation and 1997/1998 arbitration. On or about March 15, 2001, the Netherlands Appellate Court reversed the District Court's denial of the petition and granted MSI relief. (Lin Dec., ¶ 30.) Over the course of the next several years, MSI continued to seek to attach Defendant's assets and, ultimately, on December 14, 2005, judgment was entered against Defendant. (Lin Dec., ¶ 31.)

Following the entry of the judgment, Defendant made several unsuccessful efforts to set such aside. (Lin Dec., ¶ 33.) Ultimately, on September 5, 2014, the judgment was vacated. (Exhibit "5" to Lin Dec.) Pursuant to Articles 22 and 23 of the OHADA, this started a new five period. In November 2015, MSI levied 27 prejudgment third party attachments against Defendant. (Exhibit "8" to Lin Dec.)  In a February 29, 2016 interlocutory ruling, the Amsterdam District Court, in agreement with MSI, asked a number of prejudicial questions on immunity to the Netherlands Supreme Court. (Exhibit "9" to Lin Dec.) On September 30, 2016, the Netherlands Supreme Court reversed. (Lin Dec., ¶ 34.) The provisional remedies sought in 2015 suspended the statute of limitations for a period of November 16, 2015 through September 30, 2016. Thereafter, this action was filed on September 3,

2019—less than five years after the 2014 Netherlands ruling—even without even accounting for the aforementioned eleven-month period.

## C. *Eitel* factors four through seven also weigh in favor of judgment

The remaining *Eitel* factors allow the Court to consider the sum of money at stake, the possibility of a dispute concerning material facts, whether the default was due to excusable neglect, and the policies favoring decisions on the merits. *Eitel*, 782 F .2d at 1471-1472. Each weigh in favor of granting this motion.

### 1. Amount at stake

The fourth *Eitel* factor balances "the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. "This requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010); see also, *Walters v. Statewide Concrete Barrier, Inc.,* No. C 04-2559 JSW, 2006 WL 2527776, *4 (N.D.Cal. Aug. 30, 2006) ("If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted").

The damages sought, $25,433,122 (plus interest), is directly proportional because it is the amount awarded in the 2005 judgment, based upon the expert report that the Netherlands court relied upon. As set forth in the expert report, economic damages of $24,700,000 was calculated based upon the 300,000 metric tons of scrap metal that was to be retrieved. The Dutch court also awarded $630,000 and $103,122 plus, interest based upon the expert report. (Exhibit "3" to Lin Dec.)

### 2. Possibility of dispute

The fifth *Eitel* factor is the possibility of a dispute concerning material facts. Because the factual allegations set forth in the Complaint are presumed true and the Defendant has not appeared to challenge them, there is no dispute. See *Pepsico*, 238 F.Supp.2d at 1177 ("Upon entry of default, all well pleaded facts in the complaint are taken as true, except those relating to damages," citing *TeleVideo Sys.,*

12

*Inc.,* 828 F.2d at 917-918). Since Plaintiff has supported its claims with ample evidence, and defendant has made no attempt to challenge, no factual disputes exist that preclude default judgment.  Indeed, the facts themselves do not appear to have ever been substantively disputed by Defendant.

### 3.    Possibility of excusable neglect

The sixth *Eitel* factor considers whether the default was due to excusable neglect. Here, as noted above, the Defendant was appropriately served and it appears to be Defendant's practice of not appearing to respond to Plaintiff's claims or, for that matter, in actions filed by other parties in United States courts. (Exhibits "5" and "6" to Lin Dec.) Despite having been properly served, Defendant has not taken any steps to defend itself or respond to the allegations in the Complaint. Given these circumstances, there can be no excusable neglect. *FTC v. Ebusiness, LLC*, 2016 WL 3704489 at *6 (C.D. Cal. July 12, 2016).

### 4.    Policy for deciding cases on the merits

The seventh *Eitel* factor considers the policy that "[c]ases should be decided upon their merits whenever reasonably possible." See *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1013 (C.D. Cal. 2014) (quoting *Eitel*, 782 F.2d at 1472). "The mere enactment of Rule 55(b) indicates, however, that this preference, standing alone, is not dispositive . . . and does not preclude the entry of default judgment." *Id*. (internal quotation marks and citations omitted). Defendant's "failure to answer [the] Complaint make[s] a decision on the merits impractical, if not impossible." *PepsiCo,* 238 F. Supp. 2d at 1177. Since the Defendant failed to appear and defend this action, the seventh *Eitel* factor does not preclude the entry of default judgment. *Vogel*, 992 F. Supp. 2d at 1013.

### D.    The monetary relief plaintiff seeks is fair and reasonable

### 1.    Plaintiff has established damages

Courts generally decline conducting hearings when damages are established by declaration or documentation. See e.g., *FTC v. 1263523 Ontario, Inc*., 205 F.

Supp. 2d 205, 211(S.D.N.Y. 2002) (holding that default judgment of $10 million in equitable monetary relief was sufficiently supported by a declaration from Defendants' payment processor indicating revenue); *FTC v. Hope for Car Owners, LLC*, No. 2:12-cv-778, 2013 WL 322895, at *5-7 (E.D. Cal. Jan. 24, 2013) (recommending entry of order granting default judgment application without hearing, when monetary award proposed by FTC was supported by documentation from Defendants' financial institutions); *Good Ebusiness, LLC*, 2016 WL 3704489 at *7 (granting default judgment based on accountant's declaration).

Article 1149 specifically states that damages can include lost profit. Plaintiff seeks damages in the amount that the Netherlands court awarded in 2005 that was based upon the expert report submitted. That report, provided by William George Prast, a Chartered Engineer (CEng) in the United Kingdom who was registered as a European Engineer with the European Federation of National Engineering Associations, opined that the economic damages incurred, measured in 1994-1995 dollars, was $24,700,000 (Exhibit "3" to Lin Dec.)  Simple interest per the California prejudgment interest rate of seven percent per annum on that amount from December 2, 1994 to through December 2, 2019 is **$43,125,000**.

In addition, Plaintiff is entitled to damages in the principal amount of $630,000 for the monies expended in preparing for performance and simple interest thereon in the sum of **$1,102,500** from December 2, 1994 to through December 2, 2019. Finally, Plaintiff is entitled to damages in the principal amount of $103,122 for property converted and simple interest in the amount of **$180,463.50** from February 16, 1995 through February 16, 2020.

### 2.    Plaintiff is entitled to pre-judgment interest

"Awards of pre-judgment interest are governed by considerations of fairness and are awarded when it is necessary to make the wronged party whole." *Purcell v. United States*, 1 F.3d 932, 942-943 (9th Cir. 1993) (citation omitted). Prejudgment interest is intended "to compensate for the loss of use of money due as damages from

14

the time the claim accrues until judgment is entered." *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013). Article 1231-6 of the French Civil Code expressly provides that interest may be awarded. Interest is further permitted by Articles 1147 and 1149 which support full compensation for loss. Here, the award of interest is necessary to make Plaintiff whole. He has traveled the globe seeking redress from Defendant's conduct and threats of violence and damages are capable of calculation when Defendant repudiated the Agreement.

### 3.    The court should adopt a 7% per annum interest rate

The correct rate of prejudgment interest depends on the nature of the claims. "'Prejudgment interest is a substantive aspect of a plaintiff's claim, rather than a merely procedural mechanism.' . . . State law generally governs awards of prejudgment interest in diversity actions, but federal law may apply to the calculation of prejudgment interest when a substantive claim derives from federal law alone." *Oak Harbor Freight Lines, Inc. v. Sears Roebuck, & Co.*, 513 F.3d 949, 961 (9th Cir. 2008) (quoting *Sea Hawk Seafoods, Inc. v. Exxon Corp.*, 484 F.3d 1098, 1101 (9th Cir. 2007)). Even in a federal question case, the court may choose a different rate if "the equities of a particular case demand a different rate." *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1099 (9th Cir. 2010) (citation omitted).

## V.    CONCLUSION

Plaintiff requests that the Court enter judgment against the Defendant in the sum of $25,433,122, plus pre-judgment interest in the amount of $44,407,963.50, post-judgment interest and costs.

Date:  July 6, 2020          LAW OFFICES OF KYLE KUBISCH

By: _____*/s/ Kyle Kubisch*_____
KYLE KUBISCH
Attorney for Plaintiff
SHUTAO LIN