**Summary of the Judgment of the Supreme Court of September 30th, 2016**

Introduction

1.1   The Supreme Court gives a short summary of the course of the proceedings of the case between Morning Star International Corporation (**MSI**), the Republic of Gabon and the Dutch State. The Supreme Court continues by citing the prejudicial questions posed by the court in the preliminary relief proceedings.

General comments by the Supreme Court

1.2   Prior to answering the prejudicial questions, the Supreme Court provides some general information about the enforceability of judgments, jurisdictional immunities and international Law.

1.3   According to the Supreme Court, the enforceability of judgments is limited by the exceptions recognized in international law. Insofar no specific treaty is in place, such as in the relationship between Gabon and the Netherlands, this involves unwritten customary international law. At present, pursuant to Dutch unwritten customary public international law, foreign States enjoy immunity from execution. Apart from state property with a public purpose, this immunity is not absolute. The Supreme Court considers that the UN Convention on Jurisdictional Immunities of States and their Property (the **UN Convention**) can generally be seen as a codification of customary international law concerning the jurisdictional immunities and the immunity from execution.

1.4   Pursuant to the above, the Supreme Court considers that in the Netherlands, the possibility to levy both prejudgment and post-judgment attachments under article 13a Wet AB is limited by public international law, in the sense that no post-judgment measures of constraint, such as attachment, arrest or execution, against property of a State may be taken in connection with legal proceedings before a court of another State, unless and except to the extent there is a case as referred to in article 19 sub a to c of the UN treaty ("*State immunity from post-judgment measures of constraint*").

The first three prejudicial questions

1.5   The first three prejudicial questions are as follows:

*1. is there a presumption of immunity of execution on the basis of international law, which only gives way if the goods are used, or intended to be used, for the public service of the foreign state?*

*2. is it up to the party that invokes an exception to the immunity of execution to provide information to determine whether the goods are for public use, or intended for public use, in the foreign state?*

*3. or does the presumption of immunity depend on (i) indications that the goods of the foreign state have a public destination or (ii) a declaration from the foreign state stating that the goods have a public destination?*

1.6 The above questions are dealt with jointly by the Supreme Court. The Supreme Court rules that – within the scope of the immunity of execution – foreign states are not obliged to submit information to show that their assets have a purpose which opposes seizure and execution. The obligation to furnish facts and the burden of proof regarding the susceptibility of goods to seizure and execution, rest on the creditor who levies attachment or wishes to levy attachment on goods of the foreign state. Thus, even if the foreign state fails to appear, it will always have to be established whether or not the goods are susceptible to attachment.

1.7 According to the Supreme Court, the creditor must therefore always submit information on the basis of which it can be established that the goods used by the foreign state are used or intended for purposes other than public purposes. The Supreme Court continues by stating that following the above, even in the case of funds and assets used by the foreign state for different purposes, both public and commercial or otherwise, the creditor who levies the attachment or who wishes to do so, will have to argue and make plausible (i) that the funds and assets are susceptible to seizure and execution and (ii) to which extent they are.

1.8 Pursuant to the above, the Supreme Court decides that the answer to the first two prejudicial questions is affirmative and that the answer to the third prejudicial question is negative.

The forth prejudicial question

1.9 The forth prejudicial question is as follows:

*4. Does the application of the presumption of immunity violate article 6 of the European Convention on Human Rights and constitute an unacceptable interference with Dutch law on prejudgment attachments because creditors of foreign states, when carrying the burden of proof that the attached goods do not have a public destination, do not have any possibility to recover their claims from assets of a foreign state?*

1.10 According to case law of the ECHR, granting immunity from jurisdiction and execution according to international law does not constitute a breach of article 6 ECHR. In this case, the restriction concerns a legally regulated restriction on the possibility of seizure and execution, which is the result of customary public international law. The answer to the fourth prejudicial questions is therefore negative.

The fifth prejudicial questions

1.11 The forth prejudicial questions are as follows:

*5. Do the answers to the above questions differ depending on whether they regard prejudgment attachments or postjudgment attachments?*

1.12 The Supreme Court rules that in the Netherlands, the possibility to levy both prejudgment and post-judgment attachments is limited by public international law pursuant to article 13a Wet AB, in the sense that no post-judgment measures of constraint, such as attachment, arrest or execution, against property of a State may be taken in connection with a proceeding before a court of another State, unless and except to the extent there is a case as referred to in article 19 sub a to c of the UN

treaty ("*State immunity from post-judgment measures of constraint*"). The answer to the fifth prejudicial question is therefore negative.

The sixth prejudicial question

1.13   The sixth prejudicial questions are as follows:

*6. Do the questions as proposed by MSI, the Dutch State and the bailiff give reasons to other or further comments?*

1.14   The Supreme Court rules that the sixth prejudicial question requires no answer.

Conclusion

1.15   To conclude, the Supreme Court assesses the costs of these proceedings at EUR 1.800 on the part of MSI, EUR 1.800 on the part of the Dutch State and nil on the part of the Republic of Gabon.

EUI-1200878349v1